IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JULIE KIER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-CV-370-JED-FHM |
| | ) |
| ROSEANN C. LOWERY, an individual, and | ) |
| PROGRESSIVE NORTHERN INSURANCE | ) |
| CO., a foreign Insurance Company, | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Before the Court is defendant Roseann C. Lowery's Special Appearance and Motion to Dismiss for Lack of Jurisdiction and Brief in Support (Docs. 11, 12), plaintiff's Motion to Dismiss Removal and Remand for Lack of Jurisdiction (Doc. 17), and plaintiff's Request for an Extension of Time or Leave to File Out of Time (Docs. 20, 21).

Plaintiff filed this case in Delaware County District Court on November 5, 2015 against defendants Roseann C. Lowery and Progressive Northern Insurance Company ("Progressive Northern").[1] Plaintiff's lawsuit asserts the following causes of action against defendant Roseann Lowery arising out of the alleged sale of Lowery's vehicle to plaintiff: (1) breach of sales contract, (2) conversion, (3) breach of the express warranty of merchantability, and (4) punitive damages. Plaintiff asserts the following causes of action against defendant Progressive Northern related to the insurance policy plaintiff purchased for the vehicle: (1) breach of contract, (2) bad faith, and (3) punitive damages. (Doc. 2, Exh. 2).

---

[1] Plaintiff incorrectly named Progressive Insurance Company, a non-existent company, as the defendant in her state court lawsuit.

On June 21, 2016, defendant Progressive Northern removed the action to this Court based on federal diversity jurisdiction. (Doc. 2). At the time of removal, defendant Lowery had not yet been served. (Doc. 2 at 5 n.2). On July 22, 2016, defendant Lowery filed her Special Appearance and Motion to Dismiss for Lack of Jurisdiction and Brief in Support. (Docs. 11, 12). On September 5, 2016, counsel for plaintiff entered an appearance. (Doc. 14). Plaintiff filed her Objection to Defendant Lowery's Motion to Dismiss for Lack of Jurisdiction (Doc. 16) on September 20, 2016, and filed her Motion to Dismiss Removal and Remand for Lack of Jurisdiction (Doc. 17) the following day. On September 27, 2016, plaintiff filed her Request for an Extension of Time or Leave to File Out of Time. (Docs. 20, 21). Both defendants have objected to plaintiff's Motion to Dismiss Removal as well as her request for leave.

**I.     Plaintiff's Request for an Extension of Time or Leave to File out of Time (Docs. 20, 21).**

Plaintiff's Motion requests the Court to accept out of time her Motion to Dismiss for Removal and Remand for Lack of Jurisdiction (Doc. 16) and her Response to defendant Progressive Northern's Motion to Dismiss for Lack of Jurisdiction (Doc. 17).[2] Plaintiff argues that the Court should grant her Motion under the excusable neglect provision of Fed. R. Civ. P. 60.

Rule 60(b)(1) allows a court to relieve a party from a "final judgment, order, or proceeding" for "mistake, inadvertence, surprise, or excusable neglect." For purposes of Rule 60(b), "'excusable neglect' is understood to encompass situations in which the failure to comply with a

---

[2]  The Court notes that the title of plaintiff's Motion seems to request a retroactive "extension of time" to file the aforementioned pleadings, yet plaintiff has already filed the pleadings. Thus, the Court construes the Motion as a request for leave to file out of time. Moreover, if plaintiff intends to file a motion for extension of time in the future, it should be accompanied by a proposed order pursuant to LCvR 7.2(g).

2

filing deadline is attributable to negligence . . . . a party's failure to file on time for reasons beyond his or her control is not considered to constitute 'neglect.'" *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 388 (1993). Factors a court should assess include: (1) the danger of prejudice to the non-moving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith. *Id.* "[F]ault in the delay remains a very important factor—perhaps the most important single factor—in determining whether neglect is excusable.'" *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) (quoting *City of Chanute v. Williams Natural Gas Co.*, 31 F.3d 1041, 1046 (10th Cir. 1994)). "A court may take into account whether the mistake was a single unintentional incident (as opposed to a pattern of deliberate dilatoriness and delay), and whether the attorney attempted to correct his action promptly after discovering the mistake." *Jennings v. Rivers*, 394 F.3d 850, 857 (10th Cir. 2005).

Importantly, relief under Rule 60(b) is warranted only in exceptional circumstances. *See, e.g., Felts v. Accredited Collection Agency, Inc.*, 406 F. App'x 309, 311-12 (10th Cir. 2011) (unpublished); *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991). "Carelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1)." *Pelican Prod. Corp. v. Marino*, 893 F.2d 1143, 1146 (10th Cir. 1990).

In support of the Motion, plaintiff's counsel provides a list of excuses for his untimeliness. First, counsel represents that he did not receive the Notice of Removal (Doc. 2), Status Report (Doc. 3), and Notice to Interested Parties (Doc. 6) because he "simply overlooked" updating his current e-mail address on CM/ECF, as he is not "a regular practitioner in federal courts." (Doc. 21 at 2). As a result, counsel states he never received "direct notice or service of the filings" until early August 2016. (*Id.* at 3). Plaintiff's counsel maintains that he first became aware of the

removal in this case at some point in early August 2016. (*Id.* at 3). However, plaintiff's counsel also admits that he had numerous communications with counsel for defendant Progressive Northern. (*Id.* at 3-4). With respect to plaintiff's failure to timely respond to defendant Lowery's Motion to Dismiss (Docs. 11, 12), filed on July 22, 2016, counsel represents that he received the motion on August 30, 2016 due to USPS erroneously placing his mail on "hold" instead of forwarding mail to his home address. (Doc. 21 at 4, 5). Plaintiff eventually filed his Response on September 20, 2016. (Doc. 16).

Plaintiff's counsel also argues—without any case law to support his position—that his vacation time and subsequent illness further support a finding of excusable neglect. Specifically, counsel for plaintiff informs the Court that he is a solo practitioner without clerical staff and closed his office from early July 2016 through September 5, 2016 in order to undergo oral surgery and take a vacation. (Doc. 20 at 5). Yet as mentioned above, plaintiff's counsel asserts he learned of removal and received the filings in August, during his vacation and recovery time. Counsel then proceeds to state that he was "incapable of cogent thought processing" until September 19, 2016 due to his diagnoses of walking pneumonia and chronic obstructive pulmonary disease and related health issues. (*Id.* at 6). Counsel further describes that he underwent a "fugue–like condition of physical and mental condition of exhaustion and lassitude" which rendered him unable to attend to this case in September 2016. (*Id.* at 6). In light of counsel's assertions, the Court addresses plaintiff's request as to each filing below.

### A. Plaintiff's Motion to Dismiss Removal and Remand for Lack of Jurisdiction (Doc. 17)

Plaintiff's Motion, although labeled as a motion to dismiss, is in reality a motion to remand the case to state court. 28 U.S.C. § 1447(c) provides that a motion to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing

of the notice of removal." "A defect in subject matter jurisdiction can never be waived and may be raised at any time. A procedural defect, however, does not involve the subject matter jurisdiction of the court and may be waived." *Huffman v. Saul Holdings Ltd. P'ship*, 194 F.3d 1072, 1076–77 (10th Cir. 1999) (citations omitted). There is no dispute that plaintiff's motion to remand was untimely filed on September 21, 2016, three months after the removal of this case. Accordingly, analysis of plaintiff's request dictates an assessment of the grounds upon which remand is based. Here, plaintiff's motion for remand asserts both procedural and substantive grounds. First, plaintiff argues that there is no diversity of citizenship nor an amount in controversy over $75,000 under 28 U.S.C. § 1332. Second, plaintiff argues that removal is improper because defendant Lowery did not consent to removal. (Doc. 17 at 2-8). Lastly, plaintiff argues that remand is proper because he was never served with the Notice of Removal due to his outdated email on file with CM/ECF. (*Id.* at 9-17).

As stated above, plaintiff's challenge to subject matter jurisdiction cannot be waived. *See Huffman*, 194 F.3d 1072 at 1076. Thus, the Court will not strike the portion of her Motion that is premised upon subject-matter jurisdiction. However, because "[l]ack of unanimous consent is a procedural defect, not a jurisdictional defect," *Farmland Nat'l Beef Packing Co. v. Stone Container Corp.*, 98 Fed. App'x 752, 756 (10th Cir. 2004) (unpublished), plaintiff's claim to this effect is barred. Moreover, this district has rejected the practice of tolling the thirty-day remand requirement. *Kirk Family Revocable Trust v. Flint Ridge Prop. Owners Ass'n*, 2008 WL 5060209, at *3 (N.D. Okla. Nov. 20, 2008). Because plaintiff failed to timely raise the procedural defect, it has been waived.[3]

---

[3] Even if timely asserted, plaintiff could not prevail on the argument that removal lacked unanimous consent. Removal requires the unanimous consent of *served defendants* at the time of removal. 28 U.S.C. § 1446(b)(2)(A). Here, both defendants have clearly demonstrated that

5

With respect to plaintiff's argument regarding lack of notice, the Court cannot find that counsel's own failure to update CM/ECF constitutes excusable neglect under the relevant factors. While the prejudice to the defendants is minimal given that there is no scheduling order in this case, the Tenth Circuit has recognized that the most important factor in assessing excusable neglect is who is to blame for the delay. *See Torres*, 372 F.3d at 1163. Counsel's own admissions, combined with this district's rules governing CM/ECF clearly demonstrate that the delay was solely a result of counsel's carelessness. Specifically, LCvR 5.5(c) provides that "receipt of the Notice of Electronic Filing generated by the Court's Electronic Case Filing System shall constitute the equivalent of service of the paper identified in the notice on persons who have consented to electronic service." LCvR 5.5(c). The Administrative Guide of this Court states that:

> Registration as a CM/ECF user constitutes consent to electronic service of all documents . . . in accordance with the Federal Rules of Civil Procedure. The primary email address in CM/ECF will be the address required by [the Federal Rules] for service. With the exception of sealed e-filing, transmission through the CM/ECF system to that email address of a Notice of Electronic Filing will constitute service.

Administrative Guide, page 3. Further, attorneys are "required to comply with Administrative Guide procedures regarding Change of Contact Information." LCvR 5.5(a).

Counsel clearly has an ongoing obligation to update his CM/ECF contact information, and the delay was entirely attributable to him. Plaintiff's unfamiliarity with federal court procedure is apparent, but the Court declines to categorize his bewilderment as excusable neglect. Moreover, counsel delayed requesting remand for weeks after his alleged discovery of the removal, which

---

defendant Lowery had not been properly served at the time of removal. Accordingly, plaintiff's claim would have nonetheless failed on its merits. *See Sheldon v. Khanal*, 502 F. App'x 765 (10th Cir. 2012) (unpublished) (denying remand on consent grounds because the defendant had not been served at the time of removal).

further counsels against excusable neglect. *See Jennings v. Rivers*, 394 F.3d 850, 857 (10th Cir. 2005) (a district court may consider whether the attorney attempted to correct his action promptly after discovering the mistake). Lastly, defendant Progressive Northern's Notice of Removal and a Notice to Interested Parties were both filed in the state court record on June 23, 2016, the same day that plaintiff filed an Amended Petition in the state court action. It is therefore clear that counsel was aware of the federal removal much earlier than he asserts—regardless of whether he received the pleadings from CM/ECF. As such, the Court cannot find an absence of bad faith on plaintiff's part. The fact that counsel is not "a regular practitioner in federal courts" does not excuse him from "overlooking" his obligations. (Doc. 21 at 2). Counsel's lack of diligence, combined with the fact that plaintiff is entirely at fault, counsels against a finding of excusable neglect in this case.[4] *See Pelican Prod. Corp*, 893 F.2d at 1146 ("Carelessness by a litigant or his counsel does not afford a basis for relief under Rule 60(b)(1).").

---

[4] The district court in *Jones v. Oklahoma, ex rel. Dep't of Human Servs.*, WL 536008 (W.D. Okla. Feb. 7, 2014) was presented with similar facts. There, the district court denied plaintiff's motion filed pursuant to Fed. R. Civ. P. 60(b)(1), where the plaintiff alleged that he failed to respond to the dismissal motion because his attorney "did not maintain a federal court practice and did not have a current email address on file with the Court and, therefore, counsel did not receive notice of Defendants' motion to dismiss or any filings in the case." (*Id.* at *1). Because it was clear that the plaintiff's counsel was aware of removal when the Notice of Removal was filed in the state court action yet failed to explain the delay, the court determined that counsel's fault in delay combined with a lack of diligence did not constitute excusable neglect. (*Id.* at *3).

The Court's determination is also consistent with the Sixth Circuit's decision in *Yeschick v. Mineta*, 675 F.3d 622 (6th Cir. 2012), which affirmed the district court's denial of a Rule 60(b) motion based upon counsel's non-receipt of electronic filings due to his failure to update his email address. The court stated: "after an email address change or migration, just as with a change of physical address, a party must inform the court of his or her updated contact information if he wishes to receive notices of electronic filing." *Id.* at 630. The court also "emphasize[d] that regardless of whether email notifications are received, parties continue to have a duty to monitor the court's docket." *Id.*

Nor may counsel's vacation time or illness provide sufficient ground to meet the excusable neglect standard. This is particularly true in light of the fact that approximately two weeks elapsed after removal and prior to counsel's scheduled vacation and illness, yet counsel took no action.[5] The cases provided by defendant Lowery to this effect are instructive. *See, e.g.*, *Magraff v. Lowes HIW, Inc.*, 217 F. App'x 759, 761 (10th Cir. 2007) (unpublished) (affirming district court's finding of no excusable neglect based on counsel's illness because there was no evidence that counsel was ill for the entire period of delay, nor did he make any effort while ill to take action); *Wyoming Outfitters Ass'n v. Wyoming Game and Fish Com'n*, 20 F. App'x 794, 796 (10th Cir. 2001) (unpublished) (no excusable neglect to justify missed filing deadline where attorney underwent "painful and time-consuming" physical therapy); *Nolan v. Underwriters at Lloyd's, London*, 190 F.R.D. 578, 581 (D. Kan. 1999) (finding no cases where vacation time constituted excusable neglect). Upon review of all the circumstances, the Court finds that plaintiff has failed to demonstrate she is entitled to relief under Fed. R. Civ. P. 60(b)(1). Accordingly, the Court denies plaintiff's request to file out of time on procedural grounds, but may not do so on substantive grounds.

### B. Plaintiff's Response to Defendant Lowery's Motion to Dismiss for Lack of Jurisdiction (Doc. 16)

On July 22, 2016, defendant Lowery filed her Motion to Dismiss for Lack of Jurisdiction and Brief in Support (Docs. 11, 12). The deadline for plaintiff's Response to defendant Lowery's

---

In this case, not only did counsel for plaintiff neglect to update his email address, but there is also evidence that counsel knew the case had been removed and failed to monitor the federal court docket.

[5] Additionally, the Court is disturbed by the email exchange from plaintiff's counsel to counsel for defendant Progressive Northern dated August 10, 2016, which indicates that counsel was aware of removal but refused to file a response until "service of the federal pleadings and filings, and [his] return to work after enjoying a previously schedule [sic] and pre-paid vacation." (Doc. 23, Exh. 9).

Motion to Dismiss was August 26, 2016. *See* LCvR 7.2(e) (responses to motions due within twenty-one days). Plaintiff filed her Response, without seeking leave of the Court, on September 20, 2016 (Doc. 16), and now seeks leave of the Court to accept the untimely filing for excusable neglect.[6]

The local rules of this Court govern motion practice. LCvR 7.2(f) states, in relevant part: "If a dispositive motion is not opposed, the Court may in its discretion . . . provide an additional fourteen (14) days, after which the case will be dismissed or the motion will be deemed confessed, as appropriate." LCvR 1.2(c) provides that a district court "has discretion in any civil or criminal case to waive, supplement, or modify any requirement of these local rules when the administration of justice requires." In light of the "judicial system's strong predisposition for resolving cases on the merits," *Miller v. Dep't of Treasury*, 934 F.2d 1161, 1162 (10th Cir. 1991), and the fact that plaintiff's request pertains to a dispositive motion, the Court declines to deem defendant Lowery's motion to dismiss confessed. *See Meade v. Grubbs*, 841 F.2d 1512, 1521 (10th Cir. 1988) (finding that district court abused its discretion by dismissing action with prejudice when plaintiff failed to respond to motions to dismiss pursuant to local rules), *abrogated on other grounds by Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). Moreover, the Court will exercise its discretion and accept plaintiff's untimely Response. Accordingly, plaintiff's Motion as it pertains to filing his Response to defendant Lowery's Motion to Dismiss is **granted**.[7]

---

[6] The Court notes that plaintiff's request for leave was filed four days after defendant Lowery's Reply stated that plaintiff had failed to comply with the Local Rules. (*See* Doc. 18 at 2, ¶¶ 4-7).

[7] Because the Court has exercised its discretion to accept plaintiff's Response to defendant Lowery's Motion to Dismiss, it declines to address plaintiff's Fed. R. Civ. P. 60(b) argument.

9

**II.     Defendant Lowery's Special Appearance and Motion to Dismiss for Lack of Jurisdiction and Brief in Support (Docs. 11, 12)**

Defendant Lowery's Motion argues that she should be dismissed as a defendant in this case because the Court cannot exercise personal jurisdiction over her. (Doc. 12 at 1-2). Upon review of the Motion and plaintiff's Response, the Court finds that the Motion should be **granted**.

**A.  Legal Standard**

Plaintiff bears the burden of establishing that the Court has personal jurisdiction over defendant Lowery. *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). "When a district court rules on a Fed. R. Civ. P. 12(b)(2) motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *Id*. (citations omitted). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *Id*. at 1091. "In order to defeat a plaintiff's prima facie showing of jurisdiction, a defendant must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). The court must accept as true "any allegations in the complaint not contradicted by the defendant's affidavits, and resolve any factual disputes in the plaintiff's favor." *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007).

For a court to exercise personal jurisdiction over a nonresident defendant, the plaintiff must demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the United States Constitution. *See* Okla. Stat., tit. 12, § 2004(F). "Because Oklahoma's long-arm statute permits the exercise of jurisdiction that is consistent with the United States Constitution, the personal jurisdiction inquiry under Oklahoma law collapses

10

into the single due process inquiry." *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (citing *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1416 (10th Cir. 1988)); *see also Hough v. Leonard*, 867 P.2d 438, 442 (Okla. 1993).

"Due process requires that the nonresident defendant's conduct and connection with the forum state are such that the nonresident could reasonably anticipate being haled into court in that state." *Conoco, Inc. v. Agrico Chem. Co.*, 115 P.3d 829, 835 (Okla. 2004) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). "The Due Process Clause permits the exercise of personal jurisdiction over a nonresident defendant 'so long as there exist minimum contacts between the defendant and the forum State.'" *Intercon*, 205 F.3d at 1247 (quoting *World-Wide Volkswagen*, 444 U.S. at 291)). A court "may, consistent with due process, assert specific jurisdiction over a nonresident defendant 'if the defendant has purposefully directed his activities at the residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Id*. at 1247 (quoting *Burger King*, 471 U.S. at 472 (1985)). "When a plaintiff's cause of action does not arise directly from a defendant's forum related activities, the court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's business contacts with the forum state." *Id*. at 1247 (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414-16 & n.9 (1984)).

### B. Analysis

Plaintiff has not asserted a specific ground of jurisdiction. Nonetheless, the Court determines that general jurisdiction does not exist in this case, as defendant Lowery is not a citizen of Oklahoma and there is no evidence to show that she has any other continuous, general or systematic ties to the state of Oklahoma. Moreover, defendant Lowery's Motion challenges jurisdiction on the basis of specific jurisdiction. Accordingly, the Court will only assess whether

defendant Lowery is subject to specific jurisdiction, which requires: (1) minimum contacts between defendant Lowery and Oklahoma, the forum state, and (2) an analysis of whether exercising personal jurisdiction over defendant Lowery would offend "traditional notions of fair play and substantial justice," or, instead, is "reasonable." *OMI Holdings, Inc.*, 149 F.3d at 1091.

### 1. Sufficient minimum contacts

Plaintiff carries the burden to make a prima facie showing of personal jurisdiction. In assessing plaintiff's claim, the Court must resolve factual disputes in plaintiff's favor. *See Melea, Ltd.*, 511 F.3d at 1065. Based on the evidence presented, however, the Court finds plaintiff has not made a prima facie showing that defendant Lowery has minimum contacts with the state of Oklahoma.

Defendant Lowery's Motion argues that she does not have sufficient minimum contacts with Oklahoma and that there exist no other bases under which jurisdiction over her is proper. (Doc. 12 at 1-2). The affidavit submitted in support of defendant's Motion provides that defendant Lowery never engaged in any business nor entered into a contract with plaintiff in Oklahoma, did not sell any goods in Oklahoma, and never advertised to sell any cars in Oklahoma. (Doc. 12, Exh. A1, ¶¶ 2-6). Defendant Lowery further asserts that she is a resident of Missouri who works part-time as a nurse and is enrolled in college courses. (*Id.*, ¶¶ 1, 7). These facts are undisputed. In her Response, plaintiff argues that personal jurisdiction exists because defendant Lowery "has engaged in multiple acts in Oklahoma," specifically: (1) entering into a contract with an Oklahoma resident for the sale of a vehicle; (2) entering Oklahoma to "repossess" the vehicle from the repair shop; and (3) "actively engag[ing] in the conversion of plaintiff's personal property." (Doc. 16 at 2). Plaintiff's affidavit further asserts that after plaintiff's repeated attempts to contact defendant Lowery to obtain the vehicle's title, defendant Lowery responded and requested to meet at the

Cornerstone Bank in SW City. (Doc. 16, Exh. 1, ¶ 17). These facts are also undisputed. Lastly, plaintiff's Response attaches as an exhibit a copy of a handwritten, signed document titled "Bill of Sale," which states "I Roseann Lowery am selling Julie Ann Kier a 2006 Buick Rendezvous VIN # 3G5DBO3L56S509608 for $3000 on 11/5/2013." (Doc. 16, Exh. 2).

"A contract between an out-of-state party and a resident of the forum state cannot, standing alone, establish sufficient minimum contacts with the forum." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1077 (10th Cir. 2004) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985)). Rather, "relevant factors for assessing minimum contacts include 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" (*Id.* (quoting *Burger King Corp*, 471 U.S. at 479)). Moreover, "specific jurisdiction must be based on actions by the defendant and not on events that are the result of unilateral actions taken by someone else." *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004). To be clear, the "'[p]urposeful availment analysis turns upon whether the defendant's contacts are attributable to his own actions or solely to the actions of the plaintiff . . . . [and generally] requires . . . affirmative conduct by the defendant which allows or promotes the transaction of business within the forum state.'" *Rambo v. Am. S. Ins. Co.*, 839 F.2d 1415, 1420 (10th Cir. 1988) (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 840 (9th Cir. 1986)).

Here, there is no dispute that plaintiff initiated contact with defendant Lowery to purchase the vehicle. Indeed, plaintiff admits that she learned of the sale of the vehicle from a third party and "later contacted, and visited Ms. Lowery at her home" to inquire about the vehicle. (Doc. 16, Exh. 1, ¶¶ 3-4). On November 5, 2013, plaintiff "personally delivered to and paid to Rosesann [sic] Lowery $3000 to buy the [vehicle]." (*Id.*, ¶ 8). It is therefore clear that the sale of the vehicle

occurred in Missouri. Further, plaintiff concedes that for two months after the purchase of the vehicle, she made "many calls" to defendant Lowery regarding the transfer of title. (*Id.* ¶ 17). By contrast, the only actions taken by defendant Lowery occurred in response to third-party contacts: first, in response to plaintiff's calls regarding the title of the vehicle, defendant Lowery called plaintiff and asked to meet at the bank; and second, after receiving the phone call from the repair shop regarding the vehicle, defendant Lowery went to retrieve it.

Moreover, there is no indication that defendant Lowery solicited plaintiff's business or intended to form an ongoing business relationship with plaintiff. *See AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1059 (10th Cir. 2008) (minimum contacts requirement met where defendants solicited business from plaintiff, a contract was signed, and years of exchanged correspondence demonstrated there was an an ongoing business relationship); *DJRJ, LLC v. U-Swirl, Inc.*, 2016 WL 1629288, at *4 (N.D. Okla. Apr. 22, 2016) (minimum contacts found where defendant solicited business from plaintiff, the parties negotiated for almost a year before entering into a signed contract that explicitly set forth terms as to their future business together). Finally, the limited nature of defendant Lowery's with the forum state—two, to be precise—does not support minimum contacts. *See Campbell v. Bank of Am., N.A.*, 404 F. Supp. 2d 1292, 1302 (D. Kan. 2005) (two contacts between defendant and forum state found to be insufficient to support minimum contacts). Accordingly, the Court finds that the nature of defendant Lowery's contacts is not indicative of "an effort by the defendant to purposefully avail itself of the privilege of conducting activities within the forum State." *Rambo*, 839 F.2d at 1419. Because plaintiff has failed to demonstrate a prima facie showing of personal jurisdiction, the Court cannot exercise jurisdiction over defendant Lowery.

The Court's finding is consistent with those of other district courts in the Tenth Circuit. *See, e.g.*, *Cannon Storage Sys. v. Stanley*, 2013 WL 3238584, at *3 (W.D. Okla. June 25, 2013) (no minimum contacts where plaintiff solicited defendant's services, and any phone calls made by defendant were a result of plaintiff's initial action); *Cont'l Res., Inc. v. Tejon Expl. Co.*, No. CIV-14-590-M, 2014 WL 4204887, at *3 (W.D. Okla. Aug. 22, 2014) (insufficient minimum contacts where plaintiff initiated first contact with defendant and the nature of the following phone calls, emails, and letters from defendant to plaintiff were not indicative of purposeful availment in forum state).

Thus, defendant Lowery's Special Appearance and Motion to Dismiss for Lack of Jurisdiction and Brief in Support (Docs. 11, 12) is **granted**. Ms. Lowery is hereby **dismissed** and terminated as a party.

### III. Plaintiff's Motion to Remand for Lack of Jurisdiction (Doc. 17)

As set forth above, the sole issue remaining in Plaintiff's Motion to Remand (Doc. 17) is plaintiff's substantive argument, which challenges the basis for this Court's subject-matter jurisdiction over the case. Federal courts have diversity jurisdiction in cases between citizens of different states where the matter in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). Plaintiff attacks this Court's subject-matter jurisdiction as to both diversity of citizenship and the amount in controversy.

#### A. Diversity of Citizenship

Diversity jurisdiction attaches only where there is complete diversity, or in other words, "when all parties on one side of the litigation are of a different citizenship from all parties on the other side of the litigation." *Depex Reina 9 P'ship v. Texas Int'l Petrol. Corp.*, 897 F.2d 461, 463 (10th Cir. 1990). A corporation is deemed to be a citizen of any state in which it has been

incorporated and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1). However, "in any direct action against the insurer of a policy or contract of liability insurance . . . to which action the insured is not joined as a party-defendant," the insurer will be considered a citizen of "every state and foreign state of which the insured is a citizen." 28 U.S.C. § 1332(c)(1)(A). This provision is known as the "direct action exception."

Plaintiff argues there is no diversity of citizenship because the direct action exception applies. Specifically, plaintiff contends that her status as a citizen of Oklahoma confers Oklahoma citizenship on defendant Progressive Northern. (Doc. 17 at 3). The parties do not challenge that defendant Lowery is a citizen of Missouri.[8] In response, defendant Progressive Northern disputes the applicability of the direct action exception to this case. (Doc. 25 at 7-9). Progressive Northern further argues that diversity is met, citing its Notice of Removal which demonstrates it is a corporation organized and incorporated under the laws of Wisconsin with its principal place of business in Ohio. (Doc. 2, ¶ 29; Doc. 2, Exh. 9).

The Court concludes that the direct action exception does not apply to this case. There is significant federal authority holding that "actions by an insured against his or her own insurer are not direct actions within the meaning of § 1332(c)(1)." *Powers v. Allstate Motor & Cas. Ins. Co.*, 2010 WL 2270182, at *2 (D. Colo. June 7, 2010) (citing cases). The "general rule is that the proviso does not affect suits against the insurer based on its independent wrongs: such as actions brought against the insurer either by the insured for failure to pay policy benefits or by an injured

---

[8] To be clear, the fact that Ms. Lowery is no longer a party to this lawsuit has no bearing on the Court's analysis because jurisdiction is determined as of the time of removal. The Court must therefore account for Ms. Lowery's citizenship. *See St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 293 (1938).

third party for the insurer's failure to settle within policy limits or in good faith." *Rosa v. Allstate Ins. Co.*, 981 F.2d 669, 675 (2d Cir. 1992).  Here, plaintiff's claims against defendant Progressive Northern for breach of contract, bad faith, and punitive damages are based on its independent wrongs, and as such do not fall within the limited scope of the direct action provision.  Therefore, because defendant Progressive Northern is a citizen of Wisconsin and Ohio, defendant Lowery is a citizen of Missouri, and plaintiff is a citizen of Oklahoma, diversity of citizenship exists.

### B. Amount in Controversy

Plaintiff disputes that the amount of controversy sought in this case exceeds the jurisdictional amount of $75,000.  Specifically, plaintiff asserts that her state court petition, consistent with Oklahoma pleading practice, provides that her damages total "an amount in excess of TEN THOUSAND ($10,000.00) DOLLARS."  (Doc. 17 at 6-7).  In her Motion, Plaintiff stipulates that her "actual and consequential damages" amount to "TWENTY-THOUSAND DOLLARS ($20,000.00) or less."  (*Id.* at 7).  Defendant Progressive Northern's Response argues that, despite the fact that plaintiff's petition did not explicitly assert damages over $75,000, the evidence before the Court is sufficient to establish that the amount in controversy requirement is met.  (Doc. 25 at 10-16).

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.  Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014).  Because plaintiff has contested defendant Progressive Northern's allegations regarding the amount in controversy, the Court must determine whether, by a preponderance of the evidence, the amount in controversy exceeds $75,000.  *See id.*  "Only if it is 'legally certain' that the recovery (from

plaintiff's perspective) or cost of complying with the judgment (from defendant's) will be less than the jurisdictional floor may the case be dismissed." *McPhail*, 529 F.3d at 955 (quoting *Meridian Security Ins. Co. v. Sadowski*, 441 F.3d 536, 540, 543 (7th Cir. 2006)).

First, and contrary to plaintiff's assertion, she failed to comply with the Oklahoma pleading statute, Okla. Stat. tit. 12 § 2008, which requires plaintiffs to explicitly state a specific amount of damages sought.[9] *See McPhail v. Deere & Co.*, 529 F.3d 947, 955 (10th Cir. 2008) (state court petition seeking relief in excess of ten thousand dollars did not satisfy requirements of Okla. Stat. tit. 12 § 2008). Nonetheless, the Court finds that defendant Progressive Northern has carried its burden to demonstrate that the amount in controversy may exceed $75,000. Although plaintiff failed to allege the jurisdictional amount in her pleadings, the Court agrees with defendant that the existence of plaintiff's punitive damages claims[10] precludes a finding that the case definitively does not involve more than $75,000. *See Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1218 (10th Cir. 2003) ("Punitive damages may be considered in determining the requisite jurisdictional amount."). As defendant notes, plaintiff makes clear that her stipulation is limited to actual and consequential damages in an amount less than $20,000, which does not take into account the potential amount of punitive damages. (*See* Doc. 17 at 7). Because Oklahoma

---

[9] 12 Okla. Stat § 2008 states: "Every pleading demanding relief for damages in money in an amount that is required for diversity jurisdiction pursuant to Section 1332 of Title 28 of the United States Code or less shall specify the amount of such damages sought to be recovered." Defendant Progressive Northern properly made note of the petition's deficiency in its Notice of Removal. (Doc. 2 at 8, ¶ 32 n.3).

[10] As stated previously, the Court must include an assessment of the claims against Ms. Lowery because she was a defendant at the time of removal. *See St. Paul Mercury Indem. Co.*, 303 U.S. at 293 ("Thus events occurring subsequent to removal which reduce the amount recoverable, whether beyond the plaintiff's control or the result of his volition, do not oust the district court's jurisdiction once it has attached.")

law allows a plaintiff to recover punitive damages in an amount not to exceed the greater of $100,000 or the amount of actual bad-faith damages, Okla. Stat. tit. 23 § 9.1(B), a total award of $55,000 for two punitive damages claims is both permissible and conceivable under the facts. *See Singleton v. Progressive Direct Ins. Co.*, 49 F. Supp. 3d 988 (N.D. Okla. 2014) (denying remand where plaintiff sought actual damages in excess of $10,000 because even a "single-digit ratio" of punitive damages to actual damages would reach the jurisdictional threshold).

Further, in light of Supreme Court precedent, the Court declines to credit plaintiff's attempt to defeat diversity jurisdiction in the form of a post-removal stipulation. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938) (a plaintiff's actions "after removal by stipulation, by affidavit, or by amendment of his pleadings, [to] reduce [ ] the claim below the requisite amount . . . does not deprive the district court of jurisdiction."); *see also Rogers v. Wal–Mart Stores, Inc.*, 230 F.3d 868, 872 (6th Cir. 2000) ("We conclude that post-removal stipulations do not create an exception to the rule articulated in *St. Paul*. Because jurisdiction is determined as of the time of removal, events occurring after removal that reduce the amount in controversy do not oust jurisdiction."); *Russell v. Geico Gen. Ins. Co.*, 2015 WL 4394490, at *2 (N.D. Okla. July 16, 2015) ("[T]he parties' stipulation that plaintiff cannot recover more than $75,000 does not divest this Court of its pre-existing subject matter jurisdiction under § 1332(a).").

The Court therefore finds that defendant Progressive Northern has shown by a preponderance of the evidence that plaintiff's claims for actual and punitive damages place an amount exceeding $75,000 in controversy as of the time of removal. Accordingly, plaintiff's Motion to Remand for Lack of Jurisdiction (Doc. 17) is **denied**.

IS IT THEREFORE ORDERED that defendant Roseann C. Lowery's Special Appearance and Motion to Dismiss for Lack of Jurisdiction and Brief in Support (Docs. 11, 12) is **granted**,

19

plaintiff's Motion to Dismiss Removal and Remand for Lack of Jurisdiction (Doc. 17) is **denied**, and plaintiff's Request for an Extension of Time or Leave to File Out of Time (Docs. 20, 21) is **granted in part and denied in part**.

SO ORDERED this 15th day of March, 2017.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE